IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV763 |
| | ) | |
| CAMCO MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action against his former employer, Defendant Camco Manufacturing, Inc. ("Camco"), alleging discrimination based on his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (ECF No. 1 ¶¶ 30–34.) Before the Court is Defendant's Motion for Summary Judgment, (ECF No. 16). For the reasons set forth below, Defendant's motion will be granted.

## I.    BACKGROUND

Plaintiff suffers from avascular necrosis and post-traumatic arthritis in his right hip as a result of a 2009 automobile accident. (ECF No. 1 ¶ 8; ECF No. 17 at 4.) Due to his condition, Plaintiff walks with a noticeable limp and has experienced significant pain. (ECF No. 17-1 at 34–35.)

Plaintiff was employed by Defendant from May 23, 2016 to September 23, 2016 as an Injection Molding Supervisor for the nightshift. (ECF No. 17-2 ¶¶ 4, 7, 8, 17.) His responsibilities in that position included supervising more than thirty employees during his

shift and ensuring that Defendant's injection molding department operated effectively and efficiently. (*Id.* ¶¶ 5, 8.) When Plaintiff applied for the position,[1] he told Defendant that he would need hip replacement surgery "at some point," although he had not spoken with any medical provider about when he would need the surgery. (ECF No. 1 at 19, 38–39.) Plaintiff did not think that his disability would impact his ability to perform his job, and he did not ask for any accommodations with respect to his disability. (*Id.* at 37.)

Plaintiff's health problems worsened soon after he began his employment. (*See id.* at 47, 63.) Plaintiff had gallbladder surgery on August 2, 2016, and was out of work until August 15, 2016. (*Id.* at 47, 51.) Soon after his gallbladder surgery, his hip pain worsened, which led him to consult an orthopedist. (*Id.* at 55, 63.) Plaintiff scheduled hip replacement surgery for October 10, 2016, which would cause him to be out of work for three to four weeks. (*Id.* at 67, 69.) The day after Plaintiff scheduled the surgery, he informed his supervisor, Glenn Looper, about the date and the proposed recovery time. (*Id.* at 69–70.) When Plaintiff asked Donna McLarty, Defendant's Human Resource Manager, about taking time off for his surgery, she informed him that he was not eligible for leave under the Family and Medical Leave Act ("FMLA") because he had not worked for Defendant long enough. (ECF No. 17-3 ¶¶ 2, 6; ECF No. 17-1 at 73.)

In "mid-August 2016," Plaintiff's job performance began troubling his supervisors. (ECF No. 17-2 ¶ 10.) Plaintiff's supervisor, Mr. Looper, stated that "[Plaintiff's] shift was

---

[1] Defendant also introduced evidence that shows that Plaintiff lied about his previous experience when he applied to Defendant. (*See* ECF No. 17 at 3; ECF Nos. 17-6, 17-7; ECF No. 17-1 at 12–16, 21–32.) There is, however, no evidence that Defendant knew of these alleged misstatements until after Plaintiff's termination. Therefore, the Court will not consider those alleged misstatements in resolving this motion.

routinely making mistakes, sending out poor product, and underproducing." (*Id.* ¶ 11.) Plaintiff was also aware that his "shift always ran terrible" and that he had problems controlling his employees. (ECF No. 17-1 at 75, 84.)

In mid-September, 2016, Mr. Looper "determined that [Plaintiff's] department was in disarray and that [Plaintiff] had lost control of his shift." (ECF No 17-2 ¶ 13.) Mr. Looper prepared a written warning on September 22, 2016, detailing multiple, specific issues with Plaintiff's performance. (*Id.* ¶ 14.) Though he planned on discussing the warning with Plaintiff the following day, he was unable to because Plaintiff left his night shift early. (*Id.* ¶ 15.) Plaintiff sent a text message to Mr. Looper as he was leaving on the night of September 22, stating that his "right leg felt 'broke' and that he was going to the ER to have it checked out." (*Id.* ¶ 16.) As Plaintiff was leaving, he also talked with another employee, Amanda Taylor. (ECF No. 17-5 at 1.) Ms. Taylor stated that Plaintiff said that he was going to "see if the doctors would go ahead with his hip surgery" and that "he would be out until November." (*Id.* at 2.)

The following day, on September 23, 2016, Mr. Looper met with Ms. McLarty, Defendant's Human Resource Manager, and Joe Slayton, Defendant's Director of Operations, "to discuss [Plaintiff's] job performance and employment status." (ECF No. 17-4 ¶ 5.) Relying on Mr. Looper's concerns about Plaintiff's performance and Ms. Taylor's statement of her conversation with Plaintiff the night before, Mr. Slayton made the decision to terminate Plaintiff. (*Id.* ¶ 6) Mr. Slayton stated that his decision "was based on [Plaintiff's] poor job performance and [his] belief that [Plaintiff] was being dishonest about scheduling his hip

surgery." (*Id.*) Later that day, Ms. McLarty sent Plaintiff a letter, informing him that he was terminated from his employment. (ECF No. 17-3 ¶ 8.)

Plaintiff filed a Complaint on August 17, 2017, alleging one count of discrimination based on disability. (ECF No. 1.) Defendant moved for summary judgment on May 7, 2018. (ECF No. 16.) On that same day, Plaintiff's counsel moved to withdraw as attorney, citing his multiple failed attempts to contact Plaintiff. (ECF No. 18.) Following a May 15, 2018 hearing on the motion to withdraw, which Plaintiff did not attend, an Order was entered allowing Plaintiff's counsel to withdraw. (ECF No. 19.) Plaintiff now proceeds pro se and has not filed any response to Defendant's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). The role of the court is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

In this case, because Plaintiff has failed to respond to Defendant's motion, the facts presented by Defendant are not in dispute. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a 'judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). "Therefore, even when the adverse party fails to respond to the motion for summary judgment, the court must review the motion and the materials before the court to determine if the moving party is entitled to summary judgment as a matter of law." *Meyer v. Qualex, Inc.*, 388 F. Supp.2d 630, 634 (E.D.N.C. 2005); *see also* Fed. R. Civ. P. 56(e)(3); *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) ("[W]e have previously held that, in considering a motion for summary judgment, the district court *must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." (internal quotation marks omitted)).

## III. DISCUSSION

Plaintiff brought this action alleging that he was terminated because of his disability in violation of the ADA. (ECF No. 1 ¶¶ 30–34.) Defendant, in its Motion for Summary Judgment, argues that it is entitled to summary judgment because "Plaintiff was not performing his job at a level that met [Defendant's] legitimate expectations," and "Plaintiff cannot present evidence that [Defendant's] proffered reason for terminating his employment is pretext [for discrimination]." (ECF No. 16 at 1–2.)

"Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas*[2] burden-shifting framework." *Jacobs*, 780 F.3d at 572 (footnote added). A careful review of the record reflects no direct or indirect evidence of discrimination based on Plaintiff's hip disability. Therefore, the Court will address Plaintiff's claim under the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). If the plaintiff succeeds, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* Should the defendant satisfy its burden of production, the plaintiff has the final burden to persuade the factfinder that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case for disability discrimination, a plaintiff must show that "(1) he 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'" *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004)) (alterations in original). The burden of establishing a prima

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

facie case of discrimination based on disability is "not onerous." *Ennis*, 53 F.3d at 59 (quoting *Burdine*, 450 U.S. at 253).

Defendant concedes that Plaintiff can meet the first and second elements of the prima facie case. (ECF No. 17 at 14.) However, although Defendant argues that Plaintiff cannot prove the fourth element, that the circumstances of Plaintiff's discharge raise a reasonable inference of unlawful discrimination, (*id.* at 15–16), this Court disagrees. Defendant has not shown that Plaintiff could not satisfy the fourth element of the prima facie case. The evidence shows that Defendant terminated Plaintiff's employment one day after Plaintiff left work early complaining of pain in his right leg. (ECF No. 17-1 at 96.) Further, Plaintiff testified that Mr. Looper's attitude towards Plaintiff changed after he told Mr. Looper that he needed hip surgery. (*Id.* at 94.) These facts "at least raise an inference of discrimination on the basis of . . . disability." *Chamberlain v. Securian Fin. Grp.*, 180 F. Supp. 3d 381, 401 (W.D.N.C. 2016).

With regard to the third element, although a plaintiff may show that he remained qualified for his position after just a "single unsatisfactory incident," *id.*, evidence of "chronic poor job performance" will lead a court to conclude that a plaintiff was not meeting his employer's "legitimate expectations," *Ennis*, 53 F.3d at 61–62. The record in this case, includes multiple examples of Plaintiff's failure to meet his employer's legitimate expectations. On August 30, 2016, Plaintiff texted his supervisor, Mr. Looper, to inform him of numerous problems Plaintiff experienced on his previous shift and to ask for advice on how to best "run[ ] this shift." (ECF No. 17-2 at 6–8.) Mr. Looper further stated in his affidavit that "[Plaintiff's] shift was routinely making mistakes, sending out poor product, and underproducing," in addition to the problems raised by Plaintiff on August 30. (*Id.* ¶ 11.) When Plaintiff was asked

in his deposition about his shift's performance from August 30 to his termination on September 23, Plaintiff stated, "I mean, we definitely had our issues. But for what I was given to work with and the task I had to do every night, I felt like we did okay." (ECF No. 17-1 at 92.) Further, Mr. Looper prepared a written warning on September 22, 2016, detailing four issues with Plaintiff's performance. (ECF No. 17-2 at 15.) Based on this evidence, the Court concludes that Defendant has met its burden of showing that Plaintiff failed to meet his employer's legitimate expectations at the time of his termination. *See Ennis*, 53 F.3d at 61–62. Because failure to meet one element of a prima facie case is fatal to the claim, *Reynolds*, 701 F.3d at 150, Defendant is entitled to summary judgment as a matter of law.

This outcome would be the same even if the evidence had been sufficient to establish a prima facie case. Defendant has articulated a legitimate nondiscriminatory explanation for Plaintiff's termination, *i.e.*, that Plaintiff was terminated "based on [his] poor job performance and [his supervisor's] belief that [Plaintiff] was being dishonest about scheduling his hip surgery." (ECF No. 17-4 ¶ 6.) The burden then shifts to Plaintiff to affirmatively show by a preponderance of the evidence that the real reason for his termination was unlawful discrimination. Plaintiff has failed to do so, and this Court, based on the record, is unable to draw the conclusion that he was terminated in violation of the ADA. Accordingly, Defendant would still be entitled to summary judgment as a matter of law.

For the reasons outlined herein, the Court enters the following:

**[ORDER FOLLOWS ON NEXT PAGE]**

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment, (ECF No. 16), is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

A Judgment dismissing this case will be entered contemporaneously with this Memorandum Opinion and Order.

This, the 7th day of December 2018.

/s/ Loretta C. Biggs
United States District Judge